I'd like to reserve two minutes, please. Good morning, Your Honors. Jonah Nobler from Patterson, Belknap, Webb & Tyler on behalf of Appellant Arrow Electronics. The District Court denied Arrow the benefit of 23 years of insurance coverage by incorrectly applying California rather than Alabama law to interpret the term damages in these insurance contracts. California interprets damages narrowly to orders a litigant to pay at the end of a lawsuit, whereas Alabama, for strong public policy reasons, interprets damages to include amounts paid pursuant to a settlement with environmental regulators, as happened in this case. And I take it there's no dispute between the parties in this case that if Alabama law applies, you win, and if California law applies, they win? That's how I see it, and I believe that's how it was briefed below. Yes, Your Honor. So the District Court should have applied Alabama law not because it's the fairer rule, although I think it is, but because Section 1646 requires it. Cal Civil Code 1646 requires a court to interpret a contract's terms according to the law of the place where the breached obligation was intended to be performed, as long as that place can be gleaned from the text of the contract, the nature of the contract, and the surrounding circumstances, only when none of those things allow the gleaning of a place of performance, should the place of making be applied. So does this contract have multiple places of performance? The breach being alleged here, I understand, relates to the Huntsville facility, but let's assume that some other facility were involved, would it have, the contract would have multiple places of performance? Yes, Your Honor, and to be clear, there are, I believe, 30-odd contracts at issue in this case. They're slightly different, but all of them have multiple places of performance. The earlier contracts from the 1960s specify, I believe, two facilities in California and one in Alabama, the Huntsville site. Later on, as, while the predecessor in interest got larger, there were more facilities in more states, but each of those was an intended place of performance of this contract. Well, can you tell me specifically which portions of the contract, contracts in which other circumstances, in the record in this case, you think demonstrate that the parties intended Alabama to be the place of performance? Yes, Your Honor. Well, just by way of background, so Frontier Oil is the leading case in this, in this area, and it holds that the place of performance of an insurance contract, at least where the facility is expressly named in the policy, is the place of the underlying risk. But is there any indication in Frontier Oil that, or that involved a policy like, like the ones in this case, which covered many, many facilities? Yes, Your Honor. In fact, the policy in Frontier Oil In many states? Yes, Your Honor. The policy in Frontier Oil involved over 200 oil wells in, I believe, 16 different states. Only nine of those oil wells, I believe, maybe six, were in Alabama, in California. And the court in Frontier Oil, the Court of Appeals, did not say, well, like the district court did here, there are many places of performance, so there are none. So we'll go with the place of making. And that's, that's why I asked the question, is, is there's a couple district courts in the Central District, but my sense is they're all following each other, that seem to take the view that, that if there are many places of performance, then it, it must be, it must be the law of the forum that, that is, that is applied. Yes, Judge, I wish. Is there anything, and Frontier Oil seems to take a different position, is there, is there a general principle here outside of California that might be applicable? Well, so, I mean, outside of California, the general principle, I would say, is, is in the restatement of choice of law, which says, quite clearly, you apply the law of the place of the risk, even in a multiple risk contract, there's an express section on multiple risk contracts. But as far as the district court decisions that you're talking about, those decisions all involve scenarios, unlike Frontier Oil, and unlike this case, where the policyholder and the insurer just generically agreed to nationwide coverage without naming specific places. Well, so that was, and that was the question I was about to ask you, so thank you for segueing to that. What if you had a policy like that? What if a policy just said, you'll cover all our facilities, we're not specifying in the policy where they are? What would we do then? Well, that's a much more difficult question. That's why I'm asking you. So, I would say, going by the California Court of Appeal decision in a state of grace, which we cite in our briefs, it's an older decision, I believe it's from the 1960s, but that involved a contract of adoption that specified no place of performance at all, and the court said, well, but it's a contract of adoption. From the nature of the contract, we know it was intended to be performed wherever the parents took the child. Now, you could argue that's an overly broad view of sections. But that's not a multiple places. But at the time of contracting, however, it was understood that it would be performed wherever the child would be taken in the future. It could have been multiple places. Now, I think we don't need to get that far. I think what you can say is, as in Frontier Oil, when the location, a fixed facility owned by the policyholder, where the claim arose, is expressly claimed in the policy, then, you know, you can only go that far and say that that is the intended place of performance and leave for another day the situation in Ameron, in Storecraft, in all of those unpublished district court orders where, literally, there's a product liability insurance policy and, literally, a claim could arise anywhere a product happens to travel in the stream of commerce. Let me, I have a record question, record-based question for you. The excess policies don't expressly refer to the Huntsville facility. The 20 primary policies, either directly or indirectly, refer to the Huntsville facility. What's your argument with respect to the excess policies? So, let me read to you from ER 876. This is from one of the Aetna excess policies. It is the 20 primary policies. And says we cover it in a day. And it says that the insurance afforded by this policy shall follow the insuring agreement coverage and is subject to the same warranties, terms, definitions, conditions, and other provisions as are contained in the controlling insurance. So Frontier Oil says you look at the text, but you also look at the surrounding circumstances. So between the text and the fact that these are meant to add to the coverage under the primary policies that do expressly name Alabama, we think that the intent Do you agree that the excess policies do not mention or name Alabama? Not by name, no. No, but just to be clear, under no circumstances can that support the district court's holding that none of these contracts specify a place of performance. If you can just tell me specifically which portions of the contracts, just give me one Yes, Your Honor. So I'll take you through the 1982 Liberty primary policy, which is a schedule of locations, quote, unquote, naming all of the locations that are intended to be insured by this policy. That is found at ER 388, and the Huntsville facility is first among that list. By name, it appears first in the list. Then there are a number of other schedules. There's a schedule that calculates the premiums that Arrow's predecessor is supposed to pay separately for each state where coverage is intended. Alabama is one of those states. The premium to be paid for coverage in Alabama is calculated separately and specified. Then there are a couple endorsements, one for engineers, architects, and surveyors for Alabama, and an amendment defining the term executive officer for Alabama, Louisiana. And most importantly, there is a page where the policy is countersigned. It's countersigned in which a facility exists, and there is a page saying the policy identified below, dot, dot, dot, is countersigned with respect to all portions of the risk located in the state in which the resident agent resides. Signed, R.J. Bowden, resident agent of Liberty Mutual Insurance Company, Alabama. That's ER 319. Before you go on, I want to make sure I understand the record correctly. I read the district judge's order because the judge didn't think the primary policies covered the risk, or didn't think the Alabama law applied to the primary policies. He never separately treated the excess policies, is that? That's my understanding, yes. I think he looked at them all as an undifferentiated whole. Right, okay. Just wanted to make sure. The judge didn't make separate findings after those. Yes, and then, Judge McGeehan, just to finish answering your question, in one of the Aetna policies, 1967 Aetna policy at ER 610, there's a list of facilities at ER 624 that names all covered premises, including Huntsville by name, separately calculates the premiums for that facility, and even lists 25 different vehicles that are garaged at the Huntsville facility by make and model, and separately calculates the premium for each vehicle garaged at Huntsville. So, between all that and the fact that this was a rocket testing facility for NASA where solvents were being used, I think it's hard to argue that the insurers did not understand at the time of contracting they could be called upon to indemnify a claim that arose in Alabama. I think that was just obvious to all who were part of this negotiation. Did you want to reserve? Yes, thank you. Good morning, Rosemary Springer, I represent Liberty Mutual Insurance Company, and I'm presenting argument today on behalf of both appellees, Liberty Mutual and Travelers. I'd like to start by pointing out that in all of the briefing in this case, Arrow has not cited a single case that has taken the reasoning and the holding of Frontier Oil and applied it to a policy, an insurance policy that provides nationwide coverage. So your position is that if there is more than one location in an insurance policy that's covered, that the place of performance is where? My position would be what we do in this situation, in any contract interpretation situation is we apply the statute. That's what we get when we apply the statute. Which has the place of performance. And so I'm asking the question, if more than one place is covered, let's assume there's a specific place that's named in all 50 states, and one of those places has an incident which coverage is called upon, where is the place of performance? What you need to do in that situation, in any situation, is you have to glean, Frontier Oil, look through the contract documents and discern whether there's an intended place of performance. So are you saying there can only be one place of performance in every contract? Not necessarily. But if you want to compare factually, for example, our case to Frontier Oil, and look at what they found compelling in the language of the policy there versus what we have in our policy here. So what is the place of performance in your policy? The place of performance in our policy is where it is made, because you cannot, when you review the contracts as a whole, find that a place of performance is indicated. You're an insurance company. You can put the place of performance of this policy will be California. You can say this policy will be governed by California law. A choice of law provision. Choice of law provision. Yes. But you could also say the parties agree the place of performance is California. Correct. That would give us clear indication. Correct. So tell me, as I look through this policy, what gives me any hint that California is the place of performance, other than the fact that it's where it was made? Well, I think the point is that there is no place of performance. You cannot review these contract documents and come away with a feeling that the parties at the time of contracting indicated a place of performance. Okay. So you agree that the policy itself doesn't give us much hint about the place of performance, other than the naming of these facilities. Right. If you review these policies, if you do what Frontier Oil asks and you look through all the policy documents, here's what you find. First of all, as the Court already noted, you find that 14 of the 34 policies, the excess policies, don't even say the word out of ambition. Yeah, but, you know, here's the problem with those. The excess policies say we're going to cover any risk that's covered by the primary policies in excess of the policy limits. Correct. So it seems to me rather clear that the people who excuse the excess policies were saying, if it's covered by the primary policy, we're going to cover it. Well, they're not follow-form policies. Excuse me? They're not follow-form excess policies. They have their own terms and provisions. Right. And it's not the excess. Are you saying that they're not derivative of the primary policies, these excess policies? I'm saying that if you're taking, if you're reviewing the contract documents as a whole, I'm not saying the excess policies are, you know, the only factor. It's one factor when you're looking at the policies. I'm interested in your answer to the question because I thought, are you saying, let's assume the primary policy's Alabama laws to be applied with respect to this incident. Are you saying the excess policies would not apply Alabama law under those circumstances? Well, that's the problem with the vagaries of this test. No, I'm just, what's your position? Yes or no? Excess policies do not indicate any place of performance. They don't mention that. No, that's not what I asked. None of the policies indicate a place of performance other than naming the facilities. Right. My question is, let's assume that we conclude that the primary policies should apply Alabama law to this risk. Do you have an argument that the excess policies don't apply? Well, if the basis for the reasoning that the primary policies have to be governed by Alabama law as opposed to California law, if the reason for that is because based upon the information and the policies, there's enough references to Alabama to infer that the parties back at the time of contracting indicated that the place of performance is Alabama. If that's the basis for the ruling, you can't make that same ruling on the excess policies. So this is astounding to me. I just want to make sure this is really your position. Let's assume the policies, the underlying policies, indicate a place of performance in Alabama. I know that's not your position. Let's assume it is. And then your client issues an excess policy and says, I'll cover excess liability as long as it's, you know, over and above the primary policies. You're saying that under that circumstance, I wouldn't cover it because the excess policy itself didn't mention Alabama? I'm saying that, well, I'm saying that. You are saying that. I guess I'm saying that. And I think that the problem, it highlights a problem of trying to apply a choice of law on the vagaries, on these policies that provide nationwide coverage. And you're trying to determine choice of law on the vagaries of where the coverage is. But this isn't a policy that provides, at least the model one that we're talking about, doesn't provide nationwide coverage. It provides coverage over specified locations, does it not? The terms of the policy, they provide nationwide coverage, yes. And then you have to say where the facilities are. It lists a number of facilities. But, for example, you know, the policy covers liability. It doesn't per se cover buildings. It's not like a fire policy where it's covering the building. It's covering the insured's liability, which could arise, yes, at these facilities, but the liability could arise, you know, something could happen at a facility. They're testing a product and that product ends up being used somewhere else and the liability could arise anywhere in the U.S. and it could be covered. I'm sorry. I didn't mean to step on. Let's assume that Arrow acquired a new facility that wasn't in the policy and didn't notify the insurer that it acquired that facility. Would it be covered by the policy? That facility. Bought a new rocket plant in Maine, just never told the insurer about it, something happened there. Would it be covered by the policy? I can't say for sure. It seems to me reading this policy. There probably would certainly be debate as to if they didn't, you know, they certainly should have an obligation to notify the insurer. I think they do. And that's why it seems to me they're out. And it would change the nature of the risk potentially if they're adding another facility. So having notified you of all where the facilities are, doesn't that suggest that the place of performance is where they are? The problem we run into, if you take it to this level, which is what the various district courts that have looked at this have rejected this approach of just saying the test should be the intended place of performance, not where looking at the policy. We could all say, could this policy be performed in these 19 states that are mentioned in the policy? Yes. We don't deny it could be performed there. We don't deny that maybe at the time of contracting they might realize we could have to perform in some of these states. But is the test really going to be wherever it could be performed? If you want to look at what we're trying to interpret the meaning of the party's words, there's a lot of case law expressed, you know, where the state where a contract is made has a strong interest in having that contract be interpreted uniformly. And California law could provide that all contracts made in this state are interpreted according to California law, but it doesn't. It has a statute that tells us how to figure out where the place, what laws to be applied. Correct. And the question is how far do you want to take this statute? How far do you want to go with this place of performance where you have insurance policies where the claim arose could vary from case to case, and then you have what the parties mean, the meaning of their words, decided by the state where some underlying tort claim arose. But we have a California case that's Frontier Oil that sort of tells us this. And so it seems like it might be a bit more persuasive and probative of how California Supreme Court would rule on this case, more so than the district court decisions that focus us on 1646. So assuming Frontier Oil is persuasive, tell me why it shouldn't control here. One reason it shouldn't control is we, you have to look at what the language was in the policy that the court found compelling in Frontier Oil versus what we have here. And if you look at that policy, it wasn't just geographic references. It wasn't just locations in California. It was claim-specific. If you look at those endorsements, they were incredibly specific. They talked about claims arising out of this project at Beverly Hills Oil and Gas Operations, and it named as additional insurance public entities, government entities based in Beverly Hills and Los Angeles. These were tying in a tight little bow the claim and the location. It was very specific endorsements. We don't have anything like that here. We have acknowledgment that there's a facility in Alabama. We have some other references in the policies to Alabama. We also have references to, I think it's 19 states are referenced in these policies, and 30 locations in those 19 states. If you're going to go down this road, or wherever the claim arose is where the policy was performed, you're going to have complete inconsistency in what the words meant. And where the parties met, the meeting of the minds in every single one of these policies is where they were issued. That was California. That's what ties everything together here. All 34 policies were issued in California. That's where the contracts were formed. There's a certain compelling logic to deciding what the parties meant, what their words meant, by where the contracts were made, rather than the vagaries of where the underlying tort claim could be. Was 1646 talk at all about where the contracts were made? Yes. According to the law and usage of the place where the contract is made. So you're saying because there's not a place of performance, then it must be the law and usage of the place where it was made? Yes. Got you. Okay. Yes, because the goal in contract interpretation should have consistency and uniformity. Yeah. Not your fault. You represent insurers. They can have absolute certainty about what law applies in contracts, can't they? So can insurers. I mean, anyone can. Well, no, they really can't. You didn't come to them with a policy and say, let's negotiate about the law that applies. Right. But just a lesson for the future for your clients. Well, we certainly – it would have been nice if we had a choice of law provision. None of us would be here. But there is the point of how far you want to take Frontier Oil. Thank you. I think we have that well in hand. Thank you very much. All right. Thank you. I'll give you one minute to respond. Thank you. Your Honors, I agree. You have to follow Frontier Oil, and this is Frontier Oil. That case involved policy language exactly the same as this case. That case had a boilerplate coverage territory clause in the standard form part of the policy that mentioned the whole United States. But it went on to list by name 236 covered facilities across 13 states. And the Court of Appeals did not say that's too many policies, we're just going to look to where it's made, Texas. That's what the trial court did. It got reversed. They said that the forms attached to the policies, they looked at the language, the forms, and they said that it, quote, demonstrated that the parties intended it to provide coverage for the And because of that, and only because of that, it held that, quote, California was the intended place of performance for the purpose of Section 1646 with respect to those claims. That is this case. We have fewer facilities than there were in Frontier Oil. We have just as much clarity in the policy language. We would ask that the court reverse. Thank you very much. I thank you both for your arguments here today. The case of Arrow Electronics versus Liberty Mutual Insurance Company is now submitted.
judges: Murguia, Hurwitz, Gaitan